UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

PATRICK PICKNEY, Derivatively and on
Behalf of ICAHN ENTERPIRSES, L.P.

      Plaintiff,

           v.

ICAHN ENTERPRISES, G.P. INC., CARL
C. ICAHN, DAVID WILLETTS, TED
PAPAPOSTOLOU, KEITH COZZA,
SUNGHWAN CHO, DENISE BARTON,
ALVIN KRONGARD, BRETT ICAHN,
STEPHEN MONGILLO, AND MICHAEL
NEVIN

      Defendants,

        and

ICAHN ENTERPISES, L.P.,

      Nominal Defendant.

**JURY TRIAL DEMANDED**

---

**VERIFIED UNITHOLDER DERIVATIVE PETITION**

Plaintiff Patrick Pickney ("Plaintiff"), by Plaintiff's undersigned attorneys, derivatively on

behalf of Nominal Defendant Icahn Enterprises, L.P. ("Icahn Enterprises" or the "Company"),

files this Unitholder Derivative Petition against Defendant Icahn Enterprises G.P. Inc. ("Icahn

Enterprises GP") and Defendants Carl C. Icahn ("Icahn"), David Willetts ("Willetts"), Ted

Papapostolou ("Papapostolou"), Keith Cozza ("Cozza"), Sunghwan Cho ("Cho"), Denise Barton

("Barton"), Brett Icahn, ("Brett"), Alvin Krongard ("Krongard"), Stephen Mongillo ("Mongillo"),

and Michael Nevin ("Nevin"), (collectively, the "Individual Defendants" and together with the Company, "Defendants") for breaches of their fiduciary duties as directors and/or officers of Icahn Enterprises and Icahn Enterprises GP, unjust enrichment, waste of corporate assets, abuse of control, and gross mismanagement. As for Plaintiff's petition against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding the Company, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a shareholder (i.e., unitholder) derivative action that seeks to remedy wrongdoing committed by Icahn Enterprises' officers and Icahn Enterprises GP's directors between August 2, 2018, and May 9, 2023 (the "Relevant Period"), that caused damage to Icahn Enterprises.

2.     Icahn Enterprises is a publicly traded Delaware master limited partnership formed in 1987 with its principal executive offices at 16690 Collins Avenue, PH-1 Sunny Isles Beach, FL 33160.

3.      Icahn Enterprises is a holding company that conducts no operations and owns multiple subsidiaries including, Icahn Enterprises Holdings L.P. ("Icahn Enterprises Holdings") and Icahn Enterprises GP, (together with its consolidated subsidiaries, referred to as the "Operating Partnership"). The Company's activities are primarily conducted through the Operating Partnership.

4.      Icahn Enterprises owns subsidiaries engaged in the following businesses: investment, energy, automotive, food packaging, real estate, home fashion, and pharma.

5.      Icahn Enterprises' only significant asset is its approximate 99% limited partnership interest in Icahn Enterprises Holdings and its subsidiaries, which owns substantially all assets and liabilities and conducts the operations of Icahn Enterprises.

6.      Icahn Enterprises GP, the Company's general partner, performs all management functions for the Company and holds a 1% general partner interest in each of Icahn Enterprises and Icahn Enterprises Holdings and an approximate 1.99% general partner interest in Icahn Enterprises and Icahn Enterprises Holdings. The controlling shareholder of Icahn Enterprises, Defendant Icahn, currently beneficially owns approximately 85% of the Company's outstanding common units as of February 22, 2023.

7.      Icahn Enterprises GP has exclusive management powers over Icahn Enterprises. The shareholders of Icahn Enterprises GP, elect board members, who in turn select the board members of Icahn Enterprises. As such, the board of Icahn Enterprises GP has authority to bring

suit on behalf of Icahn Enterprises. Therefore, any shareholder demand for action would be made against the board of Icahn Enterprises GP.[1]

8.      During the Relevant Period, the investing public was under a false impression of the Company's business and prospects because the Individual Defendants made public statements on behalf of the Company or caused the Company to make statements, misrepresenting its current financial situation.

9.      On May 2, 2023, Hindenburg Research published a report, entitled "Icahn Enterprises: The Corporate Raider Throwing Stones From His Own Glass House," ("The Report") alleging that Icahn Enterprises' "last reported indicative year-end [net asset value] of $5.6 billion is inflated by at least 22%." Furthermore, The Report asserted that Icahn Enterprises operates on a "ponzi-like economic structure" and "has been using money taken in from new investors to pay out dividends to old investors."

10.      This news caused the unit price of Icahn Enterprises to fall $10.06 per share, or 20% to close at $40.36 per unit on May 2, 2023.

11.      Then, on May 10, 2023, before the market opened, Icahn Enterprises filed its quarterly report on Form 10-Q, with the SEC for the period ending on March 31, 2023 (the "1Q23 10-Q") Therein, Icahn Enterprises stated that they were contacted by the U.S. Attorney's office for the Southern District of New York seeking production of information relating to the Company, certain of its affiliates' "corporate governance, capitalization, securities offerings, dividends, valuation, marketing materials, due diligence and other materials." The Company claims it is

---

[1] The Boards of Icahn Enterprises and Icahn Enterprises GP are comprised of the same members, and they perform all managerial responsibilities in their capacity as Board of Directors of Icahn Enterprises GP.

"cooperating with the request and is "providing documents in response to the voluntary request for information."

12.     Upon this news, Icahn Enterprises' unit price fell to $5.75 per share, or 15.1% to close at $32.22 per share on May 10, 2023.

13.     During the Relevant Period, the Individual Defendants, in breach of their fiduciary duties, willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose the following material facts: (1) that the Company's was artificially inflating its net asset value; (2) the Company was using money from new purchases of the Company's units to pay the dividends to old investors in a "ponzi-like" scheme; (3) as a result, the Company would be subject to increased criminal and/or regulatory scrutiny; (4) consequently, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis; and (5) the Company failed to maintain internal controls

14.      Thus, the Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

15.     The Individual Defendants' breaches of fiduciary duty and other misconduct have subjected the Company, the Company's controlling shareholder, the Company's current Chief Executive Officer ("CEO"), the Company's current Chief Financial Officer ("CFO") the Company's former CEO, and former CFO to: (1) two federal securities fraud class action lawsuits pending in the United States District Court for the Southern District of Florida (the "Securities Fraud Class Actions"); (2) the need to undertake internal investigations; (3) losses from the waste of corporate assets; and (4) losses due to the unjust enrichment of Individual Defendants who were

improperly over-compensated by the Company, and will likely cost the Company going forward millions of dollars.

16.     The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

17.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are Icahn Enterprises GP's current directors, of the collective engagement in fraud and misconduct by Icahn Enterprises GP's directors, and of the substantial likelihood of the directors' liability in this derivative action, and of their not being disinterested and/or independent directors, a majority of the Board of Directors of Icahn Enterprises GP  (the "Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a question pertaining to the claims made in the Securities Class Actions based on violations of the Securities and Exchange Act of 1934.

19.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

20.     This Court has jurisdiction over each Defendant named herein.  Icahn Enterprises is a limited partnership that conducts business and maintains operations in the State of Florida. Each Individual Defendant has sufficient minimum contacts with the Southern District of Florida so as to render the exercise of jurisdiction by the Florida courts permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this Court because one or more of the Defendants either resides in or maintains its principal office in this District, and within Miami-Dade County, a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein and aiding and abetting the Individual Defendants' breaches of their fiduciary duties owed to Icahn Enterprises common unitholders, occurred in this District and within this County, and Defendants have received substantial compensation in this District and County by doing business here and engaging in numerous activities that had an effect in this District and County.

**PARTIES**

**Plaintiff**

22.     Plaintiff is a current unitholder of Icahn Enterprises common units. Plaintiff has continuously held Icahn Enterprises common units since he purchased them on April 18, 2013.

**Nominal Defendant Icahn Enterprises**

23.     Nominal Defendant Icahn Enterprises is a Delaware master limited partnership with its principal executive offices at 16690 Collins Avenue, PH-1 Sunny Isles Beach, Fl. 33160.

24.     Icahn Enterprises holds an approximate 99% limited partner interest in, and consolidates, Icahn Enterprises Holdings and Icahn Enterprises GP which is indirectly owned and controlled by Defendant Icahn and owns a 1% general partner's interest in each of Icahn Enterprises and Icahn Enterprises Holdings.

25.     Icahn Enterprises common units trade on the NASDAQ Global Select Market under the ticker symbol "IEP."

**Defendant Icahn Enterprises GP**

26.     Icahn Enterprises GP is the general partner of Icahn Enterprises Holdings and Icahn Enterprises.

27.     Icahn Enterprises GP, owns a 1% general partner interest in both Icahn Enterprises and Icahn Enterprises holding as of December 31, 2022, representing an aggregate 1.99% general partner interests in both Icahn Enterprises Holding and Icahn Enterprises

28.     Icahn Enterprises GP performs all management functions required by Icahn Enterprises.

29.     Icahn Enterprises GP and Icahn Enterprises are governed by their respective partnership agreements. These agreements contain specific provisions for the allocation of net earnings and loss to each of the partners for purposes of maintaining the partner capital accounts. These agreements also provide for each partnership to be governed by the Board of Icahn Enterprises GP.  Through these partnership agreements, Icahn Enterprises GP acts as the general partner of both Icahn Enterprises and Icahn Enterprises Holdings and thereby manages and operates the activities of Icahn Enterprises and the Operating Partnership.

30.     Icahn Enterprises GP has reported that it anticipates that its activities will be limited to the management and operation of the partnerships.  Neither Icahn Enterprises, nor the Operating Partnership directly employs any of the persons responsible for the management or operations of the partnerships, rather, these individuals are employed by Icahn Enterprises GP.

31.     The Board of Directors of Icahn Enterprises GP has adopted the Code of Ethics and Business Conduct ("Code of Ethics") which applies to all employees, directors, and officers of Icahn Enterprises, Icahn Enterprises GP, and Icahn Enterprises Holdings.

32.     The Audit Committee of Icahn Enterprises GP is subject to the Charter of the Audit Committee of the Board of Directors of Icahn Enterprises G.P., Inc, (the "Charter") which applies to the Audit Committee of Icahn Enterprises, and Icahn Enterprises GP.

**Defendant Icahn**

33.     Defendant Icahn has served as the controlling shareholder and Chairman of the Board since 1990. According to the Form 10-K filed with the SEC on February 24, 2023, for the fiscal year ended December 31, 2022 (the "2022 10-K") as of February 22, 2023, Defendant Icahn beneficially owned 299,997,624 depository units, representing 84.9% ownership interest. Given that the price per Company unit at the close of trading on February 22, 2023, was $48.87 Icahn owned $14.6 billion worth of Company depository units as of that date.

34.     For the fiscal year ended December 31, 2022, Defendant Icahn received, for his services to Icahn Enterprises subsidiaries, $15,544 in total compensation including $1 in salary and $15,543 in all other compensation. For the fiscal year ended December 31, 2021, Defendant Icahn for his services to Icahn Enterprises subsidiaries, received $14,637 in total compensation including $1 in salary and $14,636. For the fiscal year ended December 31, 2020, Defendant Icahn, for his services to the Company's subsidiaries received $14,637 in total compensation including $1 in salary and $14,636 in all other compensation. For the fiscal year ended December 31, 2019, Defendant Icahn received $66,143 in total compensation including $1 in salary, and $66,142 in all other compensation. For the fiscal year ended December 31, 2018, Defendant Icahn received $66,143 in total compensation including $1 in salary and received $66,142 in all other compensation.

35.     During the Relevant Period, while the Company's stock price was artificially inflated and before the scheme was exposed, Defendant Icahn made the following sale of Company units:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|---|---|---|---|
| October 1, 2020 | 202,758 | $49.32 | $10,000,024 |

36.     The 2022 10-K stated the following about Defendant Icahn:

**Carl C. Icahn** has served as Chairman of the Board and a director of Starfire Holding Corporation, a privately-held holding company, and Chairman of the Board and a director of various subsidiaries of Starfire Holding Corporation, since 1984. Since August 2007, through his position as Chief Executive Officer of Icahn Capital LP, a wholly-owned subsidiary of Icahn Enterprises and certain related entities, Mr. Icahn's principal occupation has been managing private investment funds, including Icahn Partners LP and Icahn Partners Master Fund LP. Since 1990, Mr. Icahn has been Chairman of the Board of Icahn Enterprises GP, the general partner of Icahn Enterprises. Mr. Icahn was previously: Chairman of the Board of Tropicana Entertainment Inc., a company that is primarily engaged in the business of owning and operating casinos and resorts, from 2010 until 2018; Chairman of the Board of CVR Refining, LP from 2013 to 2018; Chairman of the Board of CVR Energy, Inc., from 2012 to 2018; President and a member of the Executive Committee of XO Holdings, from 2011 to 2017, and Chairman of the Board of its predecessors, from 2003 to 2011; a director of Federal-Mogul LLC, a supplier of automotive powertrain and safety components, from 2007 to 2015, and the non-executive Chairman of the Board of Federal-Mogul LLC, from 2008 to 2015; Chairman of the Board of American Railcar Industries, Inc., a railcar manufacturing company, from 1994 to 2014; a director of American Railcar Leasing LLC, a lessor and seller of specialized railroad tank and covered hopper railcars, from 2004 to 2013; a director of WestPoint Home LLC, from 2005 to 2011; and a director of Cadus Corporation, a company engaged in the acquisition of real estate for renovation or construction and resale, from 1993 to 2010.

Mr. Icahn brings to his role as the Chairman of the Board his significant business experience in leadership roles as director in various companies as discussed above, including certain of our subsidiaries. In addition, Mr. Icahn is uniquely qualified

based on his historical background for creating value in companies across multiple industries. Mr. Icahn has proven to be a successful investor over the past 40 years.

**Defendant Willetts**

37.     Defendant Willetts has served as the CEO of Icahn Enterprises since November 2021 and as a member of the Board since 2021. According to the 2022 10-K, as of February 22, 2023, Defendant Willetts beneficially owned 69,498 Company depository units. Given that the price per Company depository unit at the close of trading on February 22, 2023, was $48.87, Defendant Willetts beneficially owned over $3.3 million worth of Company depository units as of that date.

38.     For the fiscal year ended December 31, 2022, Defendant Willetts received $2,552,942 in total compensation including $1,000,000 salary, $1,550,000 bonus, and $2,942 in all other compensation.  For the fiscal year ended December 31, 2021, Defendant Willetts received $5,067,930 in total compensation including $428,654 in salary, $887,535 in bonus, $3,750,000 in unit awards and $1,741 in all other compensation.

39.     The 2022 10-K stated the following about Defendant Willetts:

***David Willetts*** has served as Chief Executive Officer of Icahn Enterprises since November 2021 and director since June 2021. Mr. Willets previously served as Chief Financial Officer of Icahn Enterprises from June 2021 until November 2021. In addition, Mr. Willetts has served as a Managing Director at AlixPartners, a global consulting firm which specializes in improving corporate financial and operational performance and executing corporate turnarounds. Since 2012, Mr. Willetts has worked continuously with Private Equity firms and public companies in the industrial, automotive, consumer products, retail and energy sectors. Prior to that time, he was a senior operating executive at Cerberus Capital for eight years, serving in multiple financial and operating roles including Chief Financial Officer, divisional Chief Executive Officer and lead executive restructuring roles within Cerberus' operating companies. Prior to 2005, Mr. Willetts was employed at General Electric in progressive finance executive roles within General Electric's Corporate Audit Staff and industrial business units, including as the Chief Financial Officer of GE Lighting Systems and Chief Financial Officer of GE C&I Lighting,

- 11 -

North America. Mr. Willetts graduated from Franklin and Marshall College in 1997 Summa Cum Laude, with a B.A. in business, with a double concentration in accounting and finance. Mr. Willetts has served as director of Viskase Companies, Inc., since June 2021, and CVR Energy, Inc. and CVR Partners LP since July 2021. Viskase Companies, Inc., CVR Energy, Inc. and CVR Partners LP are each indirectly controlled by Carl C. Icahn.

Mr. Willetts brings to his service as a director his significant experience in leadership roles as director of various companies as discussed above. In particular, his experience as Chief Financial Officer and divisional Chief Executive Officer of Cerberus Capital enables him to understand the complex business and financial issues that we may face.

**Defendant Papapostolou**

40.     Defendant Papapostolou has served as Icahn Enterprises' CFO since 2021, Chief Accounting Officer since 2022 and director and secretary of Icahn Enterprises GP since 2020. According to the 2022 10-K as of February 22, 2023, Defendant Papapostolou beneficially owned 30,579 depository units. Given the price per Company depository unit at the close of trading on February 22, 2023, was $48.87 Papapostolou beneficially owned over $1.4 million worth of the Company's depository units as of that date.

41.     For the fiscal year ended December 31, 2022, Defendant Papapostolou received $660,765 in total compensation, including $550,000 in salary, $100,000 in bonus, and $10,765 in all other compensation. For the fiscal year ended December 31, 2021, Defendant Papapostolou received $2,023,188 in total compensation including $271,000 in salary, $100,000 in bonus, $1,650,000 and $11,251 in all other compensation. For the fiscal year ended December 31, 2020, Defendant Papapostolou received $361,230 in total compensation, including $250,000 in salary, $100,000 in bonus, and $11,230 in all other compensation.

42.     The 2022 10-K stated the following about Defendant Papapostolou:

*Ted Papapostolou* has served as Chief Financial Officer of Icahn Enterprises since November 2021 and Chief Accounting Officer of Icahn Enterprises since March 2020. In addition, Mr. Papapostolou has served as director of Icahn Enterprises since December 2021 and its Secretary since April 2020. Mr. Papapostolou served in various progressive accounting positions at Icahn Enterprises from March 2007 to March 2020. Previously, Mr. Papapostolou worked at Grant Thornton LLP in their audit practice. Mr. Papapostolou received his M.B.A. from The Peter J. Tobin College of Business at Saint John's University and his B.B.A. from Frank G. Zarb School of Business at Hofstra University. Mr. Papapostolou has served as director of Viskase Companies, Inc., since April 2020. Viskase Companies, Inc., is indirectly controlled by Carl C. Icahn

### **Defendant Cozza**

43.     Defendant Cozza has served as Icahn Enterprises' president, and CEO, and also a director of Icahn Enterprises GP from 2014 until May 10, 2021. According to the Form 10-K filed with the SEC on February 26, 2021, for the fiscal year ended December 31, 2020 ("2021 10-K"), as of February 26, 2021, Defendant Cozza beneficially owned 2,000 Company depository units. Given that the price per Company depository unit at the close of trading on February 26, 2021 was $43.20, Cozza beneficially owned $86,400 million worth of Company depository units as of that date.

44.      For the fiscal year ended December 31, 2021, Defendant Cozza received $2,942,918 in total compensation including $856,904 in salary, $2,083,333 bonus, and $2,681 in all other compensation. For the fiscal year ended December 31, 2020, Defendant Cozza received $6,511,588, in total compensation including $1,500,000 in salary, $5,000,000 bonus, and $11,588 in all other compensation. For the fiscal year ended December 31, 2019, Defendant Cozza received $6,5111,387 in total compensation, including $1,500,043 in salary, $5,000,000 in bonus, and $11,344 in all other compensation. For the fiscal year ended December 31, 2018, $1,528,889 in

salary, $5,000,000 in bonus, and $10,719 in all other compensation. Upon Defendant Cozza's resignation and departure in 2021 he received a pro-rated cash bonus of $2,083,333

45.     The 2021 10-K stated the following about Defendant Cozza:

**Keith Cozza** has been the President and Chief Executive Officer of Icahn Enterprises since February 2014. In addition, Mr. Cozza has served as Chief Operating Officer of Icahn Capital LP, the subsidiary of Icahn Enterprises through which Carl C. Icahn manages investment funds, since February 2013. From February 2013 to February 2014, Mr. Cozza served as Executive Vice President of Icahn Enterprises. Mr. Cozza is also the Chief Financial Officer of Icahn Associates Holding LLC, a position he has held since 2006. Mr. Cozza has been a: Chairman of the Board of Xerox Corporation, a provider of document management solutions, since May 2018; and director of Icahn Enterprises since September 2012. In addition, Mr. Cozza serves as a director of certain wholly-owned subsidiaries of Icahn Enterprises, including: Icahn Automotive Group LLC and PSC Metals, LLC. Mr. Cozza was previously: a director of Tenneco Inc., manufacturers of Ride Performance, Clean Air products and technology solutions for automotive and commercial vehicles, from October 2018 until March 2019; a director of Federal-Mogul LLC, a supplier of automotive powertrain and safety components, from January 2017 until October 2018; a director of Tropicana Entertainment Inc., a company that is primarily engaged in the business of owning and operating casinos and resorts, from February 2014 until October 2018; a director of Herbalife Ltd., a nutrition company, from April 2013 until April 2018; a member of the Executive Committee of American Railcar Leasing LLC, a lessor and seller of specialized railroad tank and covered hopper railcars, from June 2014 to June 2017; a director of FCX Oil & Gas Inc., a wholly-owned subsidiary of Freeport-McMoRan Inc., from October 2015 to April 2016; a director of CVR Refining, LP from January 2013 to February 2014; and a director of MGM Holdings Inc., an entertainment company focused on the production and distribution of film and television content, from April 2012 to August 2012. Icahn Enterprises, Icahn Automotive Group LLC, PSC Metals, LLC and CVR Refining, LP each are indirectly controlled by Carl C. Icahn, and Federal-Mogul LLC, Tropicana Entertainment Inc. and American Railcar Leasing LLC were previously indirectly controlled by Mr. Icahn. Mr. Icahn has or previously had non-controlling interests in Xerox Corporation, Tenneco Inc., Herbalife Ltd., Freeport-McMoRan, and MGM Holdings through the ownership of securities.

Mr. Cozza brings to his service as a director his significant experience in leadership roles as director of various companies as discussed above. In particular, his experience as Chief Financial Officer of Icahn Associates Holding LLC enables him to understand the complex business and financial issues that we may face.

- 14 -

**Defendant Cho**

46.     Defendant Cho had served as the Company's CFO from March 2012 until June 2021. According to the 2021 10-K, as of February 26, 2021, Defendant Cho beneficially owned 1,100 of the Company's depository units. Given that the price per Company depository unit at the close of trading on February 26, 2021 was $43.20 Defendant Cho beneficially owned $47,520 worth of Company depository units as of that date.

47.     For the fiscal year ended December 31, 2021, Defendant Cho received $1,369,793 in total compensation, $669,581 in salary, $697,531 bonus, and $2,681 in all other compensation. For the fiscal year ended December 31, 2020, Defendant Cho received $2,551,588 in total compensation including $840,000 in salary, $1,700,000 in bonus, and $11,588 in all other compensation from the Company. For the fiscal year ended December 31, 2019, Defendant Cho received $2,590,138 in total compensation, including $878,794 in salary, $1,700,000 in bonus, and $11,344 in all other compensation. For the fiscal year ended December 31, 2018, Defendant Cho received $2,559,973 in total compensation including $849,254 in salary, $1,700,000 in bonus, and $10,719 in all other compensation. Upon Defendant Cho's resignation and departure in 2021, he received a pro-rated cash bonus of $2,083,333.

48.     The 2021 10-K stated the following about Defendant Cho:

***SungHwan Cho*** has served as Chief Financial Officer of Icahn Enterprises since March 2012. Prior to that time, he was Senior Vice President and previously Portfolio Company Associate at Icahn Enterprises since October 2006. Mr. Cho has been a: director of Hertz Global Holdings, Inc., a company engaged in the car rental business, since May 2017; director of CVR Energy, Inc. since May 2012 (and has been Chairman of the Board of CVR Energy, Inc. since June 2018); and director of Icahn Enterprises since September 2012. In addition, Mr. Cho serves as a director of WestPoint Home LLC. Mr. Cho was previously: a director of PSC Metals, LLC; a director of Icahn Automotive Group LLC; a director of Tenneco Inc., manufacturers of Ride Performance, Clean Air products and technology solutions

for automotive and commercial vehicles, from April 2019 until June 2020; a director and Chairman of the Board of Ferrous Resources Limited, an iron ore mining company, from January 2017 until July 2019; a director (from January 2013) and Chairman of the Board (from June 2018) of CVR Refining, LP until January 2019; a member of the Executive Committee of American Railcar Leasing LLC, a lessor an seller of specialized railroad tank and covered hopper railcars, from September 2013 to June 2017; a director of CVR Partners, LP from May 2012 to April 2017; a director of Viskase Companies, Inc. from November 2006 to April 2017; a director of Take-Two Interactive Software Inc., a publisher of interactive entertainment products, from April 2010 to November 2013; a director (from June 2011) and Chairman of the Board (from July 2014) of American Railcar Industries, Inc., a railcar manufacturing company, until December 2018; and a director of Federal-Mogul LLC, a supplier of automotive powertrain and safety components, until October 2018. Icahn Enterprises, CVR Energy, Inc., Icahn Automotive Group LLC, PSC Metals, LLC, WestPoint Home LLC, CVR Partners, LP, Viskase Companies, Inc. and CVR Refining, LP each are indirectly controlled by Carl C. Icahn, and Ferrous Resources Limited, American Railcar Leasing LLC, American Railcar Industries, Inc. and Federal-Mogul LLC, were previously indirectly controlled by Mr. Icahn. Mr. Icahn has or previously had a non-controlling interest in each of Hertz Global Holdings, Tenneco, Inc. and Take-Two Interactive Software through the ownership of securities.

Mr. Cho brings to his service as a director his significant experience in leadership roles as director of various companies as discussed above. In particular, his service as Chief Financial Officer of Icahn Enterprises and Icahn Enterprises Holdings enables him to understand the complex business and financial issues that we may face.

**Defendant Barton**

49.     Defendant Barton has served as Icahn Enterprises GP director since September 2019. She also served as a member of the Audit Committee from September 2019 to April 2021.

50.     For the fiscal year ended December 31, 2022, Defendant Barton received $35,000 in compensation from the Company all in fees earned or paid in cash. For the fiscal year ended 2021, Defendant Barton received $39,208 in compensation from the Company all in fees earned or paid in cash. For the fiscal year ended December 31, 2020, Defendant Barton received $39,208

in fees earned or paid in cash. For the fiscal year December 31, 2019, Defendant Barton received

$9,205 in fees earned or paid in cash.

51.     The 2022 10-K stated the following about Defendant Barton:

**Denise Barton** has served as a director of Icahn Enterprises' general partner, Icahn
Enterprises GP, since September 2019 and was a member of our audit committee
from September 2019 until April 2021. In addition, Ms. Barton has served as Chief
Financial Officer of IEH Auto Parts LLC, a subsidiary of Icahn Enterprises since
July of 2021 and both Chief Executive Officer and Chief Financial Officer of IEH
Auto Parts LLC since September 2021. Ms. Barton currently serves as director of
certain subsidiaries of Icahn Automotive Group LLC. Previously, Ms. Barton has
served on the board of directors and audit committee for Viskase Companies, Inc.,
a subsidiary of Icahn Enterprises, from May 2016 until January 2022 and served on
the board of directors and audit committee for Trump Entertainment Resorts, Inc.,
a subsidiary of Icahn Enterprises, from February 2016 through June 2017. Ms.
Barton served as a member of the Operating Executive Board of Gotham Private
Equity Partners, LP, a New York based merchant banking firm, from March 2010
through January 2014. Ms. Barton served as the Chief Financial Officer for Land
Holdings I, LLC, a company formed to develop, own and operate the Scarlet Pearl
Casino Resort, from March 2012 through March 2017. In addition, Ms. Barton has
over 15 years' experience in public accounting and has served as Chief Financial
Officer in both public and private companies. Ms. Barton is a certified public
accountant and has been licensed by the Nevada State Gaming Control
Commission, the New Jersey Casino Control Commission and the Mississippi
Gaming Commission.

Ms. Barton brings to her service as a director her significant experience in
leadership roles as director of various companies as discussed above. In particular,
her service as Chief Financial Officer of various companies enables her to
understand the complex business and financial issues that we may face.

### **Defendant Krongard**

52.     Defendant Krongard has served as an Icahn Enterprises GP director since March

2019 and is a member of the Board's Audit Committee. According to the 2022 10-K, as of

February 22, 2023, Defendant Krongard beneficially owned 41,008 in the Company's depository

units. Given that the price per Company depository unit at the close of trading on February 22,

2023, was $48.87, Defendant Krongard beneficially owned over $2 million worth of the Company's depository units as of that date.

53.     For the fiscal year ended December 31, 2022, Defendant Krongard received $35,000 in fees earned or paid in cash. For the fiscal year ended December 31, 2021, Defendant Krongard received $35,000 in fees earned or paid in cash.  For the fiscal year ended December 31, 2020, Defendant Krongard received $35,000 in fees earned or paid in cash. For the fiscal year ended December 31, 2019, Defendant Krongard received $27,880 is fees earned or paid in cash.

54.     The 2022 10-K stated the following about Defendant Krongard:

*Alvin B. Krongard* has served as a director of Icahn Enterprises' general partner, Icahn Enterprises GP, since March 2019 and is a member of our audit committee. Mr. Krongard currently serves as a director and a member of the audit committee of the board of directors of Apollo Global Management, LLC; as a director and chairman of the corporate governance committee and the investment committee of the board of directors of Iridium Communications Inc. and previously served as the lead independent director and chairman of the audit committee of the board of directors of Under Armour, Inc from March 2019 until May 2020. He served as Executive Director of the Central Intelligence Agency from 2001 to 2004 and as counselor to the Director of the Central Intelligence Agency from 2000 to 2001. Mr. Krongard previously served in various capacities at Alex.Brown, Incorporated, including serving as Chief Executive Officer beginning in 1991 and assuming additional duties as Chairman of the board of directors in 1994. Upon the merger of Alex.Brown with Bankers Trust Corporation in 1997, Mr. Krongard became Vice Chairman of the Board of Bankers Trust and served in such capacity until joining the Central Intelligence Agency in 1998.

Mr. Krongard brings to his service as a director his significant experience in leadership roles as director of various companies as discussed above. In particular, his service as Chief Executive Officer of Alex.Brown, Incorporated enables him to understand the complex business and financial issues that we may face.

**Defendant Brett Icahn**

55.     Defendant Brett has served as an Icahn Enterprises GP director since October 2020. Defendant Brett Icahn also served previously as a consultant for Icahn Enterprises, exclusively

providing investment advice to Defendant Icahn. Defendant Brett is also the son of Defendant

Icahn. According to the 2022 10-K, as of February 22, 2023, Defendant Brett Icahn beneficially

owned 408,404. Given that the price per Company depository unit at the close of trading on

February 22, 2023, was $48.87 Defendant Brett beneficially owned over $19 million worth of the

Company's depository units as of that date.

      56.    The 2022 10-K stated the following about Defendant Brett:

**Brett Icahn** has served as a director of Icahn Enterprises' general partner, Icahn
Enterprises GP and has been a Portfolio Manager for Icahn Capital LP, a subsidiary
of Icahn Enterprises since October 2020. Mr. Icahn was previously a consultant for
Icahn Enterprises, where he exclusively provided investment advice to Carl C.
Icahn with respect to the investment strategy for Icahn Enterprises' Investment
segment and with respect to capital allocation across Icahn Enterprises' various
operating subsidiaries from 2017 to 2020. From 2010 to 2017, Mr. Icahn was
responsible for co-executing an investment strategy across all industries as a
Portfolio Manager of the Sargon Portfolio for Icahn Capital LP, the entity through
which Carl C. Icahn manages investment funds. From 2002 to 2010, Mr. Icahn
served as an investment analyst for Icahn Capital LP and in a variety of investment
advisory roles for Carl C. Icahn. Mr. Icahn has been a director of Newell Brands
Inc., a global marketer of consumer and commercial products, since March 2018,
and Bausch Health Companies Inc., a manufacturer and marketer of
pharmaceuticals, over the counter products and medical devices, since March 2021.
Mr. Icahn was previously a director of: Nuance Communications, Inc., a provider
of voice and language solutions, from October 2013 to March 2016; Voltari
Corporation, a mobile data services provider, from January 2010 to August 2014;
American Railcar Industries, Inc., a railcar manufacturing company, from January
2007 to June 2014; Cadus Corporation, a company engaged in the acquisition of
real estate for renovation or construction and resale, from January 2010 to February
2014; Take-Two Interactive Software Inc., a publisher of interactive entertainment
products, from April 2010 to November 2013; and The Hain Celestial Group, Inc.,
a natural and organic products company, from July 2010 to November 2013. Voltari
Corporation, American Railcar Industries and Cadus Corporation were previously
indirectly controlled by Carl C. Icahn. Carl C. Icahn also has or previously had non-
controlling interests in Newell Brands Inc., Nuance Communications, Inc., Take-
Two Interactive Software Inc. and the Hain Celestial Group through the ownership
of securities. Brett Icahn is the son of Carl C. Icahn.
Mr. Icahn brings to his service as a director his significant experience in
leadership roles as director of various companies as discussed above. In addition,
Mr. Icahn is uniquely qualified based on his prior experience working as an

- 19 -

investment analyst for Icahn Capital LP.

**Defendant Mongillo**

57.     Defendant Mongillo has served as an Icahn Enterprises GP director since March 2020. Defendant Mongillo also serves as a member of the Audit Committee.

58.     For the fiscal year ended December 31, 2022, Defendant Mongillo received $40,000 in fees earned or paid in cash. For the fiscal year ended December 31, 2021, Defendant Mongillo received $38,466 in fees earned or paid in cash.  For the fiscal year ended December 31, 2020, Defendant Mongillo received $27,828 in fees earned or paid in cash.

59.     The 2022 10-K stated the following about Defendant Mongillo

*Stephen A. Mongillo* has served as a director of Icahn Enterprises' general partner, Icahn Enterprises GP, since March 2020 and is a member of our audit committee. Mr. Mongillo has served as a director of CVR Energy, Inc., a majority owned subsidiary of Icahn Enterprises, since May 2012. Mr. Mongillo is currently, and has been since April 2012, the Chairman and Chief Executive Officer of AMPF, Inc., a distributor of picture frame mouldings and supplies of which he is also the principal shareholder. Previously, Mr. Mongillo served as: a director of HERC Holdings, Inc., a publicly traded equipment rental company, from 2016 until 2018; a director of American Railcar Industries, Inc from 2009 until 2011; a director of WestPoint Home LLC, from March 2009 until January 2011; and a managing director of Icahn Capital LP, from January 2008 until January 2011. Icahn Capital LP and WestPoint Home, LLC are each indirectly controlled by Carl C. Icahn. American Railcar Industries, Inc. was previously indirectly controlled by Carl C. Icahn. Carl C. Icahn also previously had non-controlling interests in HERC Holdings, Inc through the ownership of securities. Mr. Mongillo received a B.A. from Trinity College and an M.B.A. from the Amos Tuck School of Business Administration at Dartmouth College.

Mr. Mongillo brings to his service as a director his significant experience in leadership roles as director of various companies as discussed above. In particular, his service as Chief Executive Officer of AMPF, Inc. enables him to understand the complex business and financial issues that we may face.

**Defendant Nevin**

60.     Defendant Nevin has served an Icahn Enterprises GP director since December 2018. Defendant Nevin has also served as CFO of Icahn Automotive Group, LLC, a subsidiary of Icahn Enterprises, from August 2019 to November 2022. Defendant Nevin is the son in law of Defendant Icahn.

61.     The 2022 10-K stated the following about Defendant Nevin:

**Michael Nevin** has served as a director of Icahn Enterprises' general partner, Icahn Enterprises GP, since December 2018 and has served as Managing Director from June 2018 until August 2019. In addition, Mr. Nevin has served as Chief Financial Officer of Icahn Automotive Group LLC from August 2019 to November 2022. From July 2015 to June 2018, Mr. Nevin served as a Financial Analyst at Icahn Enterprises. Prior to joining Icahn Enterprises, Mr. Nevin was employed by Jefferies LLC as a Research Analyst from 2014 to 2015 covering the utilities sector. Mr. Nevin was also employed by JP Morgan Investment Bank in various roles from 2009 to 2014, most recently as an Associate from 2012 to 2014. Mr. Nevin currently serves as director of certain subsidiaries of Icahn Automotive Group LLC. Mr. Nevin was previously: a director of Viskase Companies, Inc. from April 2017 until January 2022; a director of Conduent Incorporated, a provider of business process outsourcing services, from December 2016 through August 2019; a director of Ferrous Resources Ltd, an iron ore mining company, from December 2016 through its sale in August 2019; a director of American Railcar Industries, Inc., a railcar manufacturing company, from February 2017 through its sale in December 2018; and a director of Federal-Mogul LLC, a supplier of automotive powertrain and safety components, from February 2016 through its sale in October 2018. Viskase Companies, Inc., is indirectly controlled by Carl C. Icahn. Ferrous Resources Ltd., American Railcar Industries, Inc. and Federal-Mogul LLC were previously indirectly controlled by Mr. Icahn. Carl C. Icahn also has a non-controlling interest in Conduent Incorporated through the ownership of securities. Mr. Nevin is married to the daughter of Carl C. Icahn.

Mr. Nevin brings to his service as a director his significant experience in leadership roles as director of various companies as discussed above. In particular, his service as Chief Financial Officer of Icahn Automotive enables him to understand the complex business and financial issues that we may face.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

62.     By reason of their positions as officers, directors and/or fiduciaries of Icahn Enterprises and Icahn Enterprises GP, and because of their ability to control the business and

corporate affairs of Icahn Enterprises, the Individual Defendants owed Icahn Enterprises and its unitholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Icahn Enterprises in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Icahn Enterprises and its unitholders so as to benefit all unitholders equally.

63.     Each director of Icahn Enterprises GP and officers of Icahn Enterprises owes to Icahn Enterprises and its unitholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

64.     The Individual Defendants, because of their positions of control and authority as directors of Icahn Enterprises GP, and officers of Icahn Enterprises were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

65.     To discharge their duties, the officers of Icahn Enterprises and directors of Icahn Enterprises GP were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

66.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its unitholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Icahn Enterprises GP and Icahn Enterprises, the absence of good faith on their part, or a reckless disregard for their duties to the

Company and its unitholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of Icahn Enterprises GP has been ratified by the remaining Individual Defendants who collectively comprised Icahn Enterprises Board at all relevant times.

67.     As senior executive officers and directors of a publicly-traded company whose common units were registered with the SEC pursuant to the Securities Exchange Act of 1934 ("Exchange Act") and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to, *inter alia*, the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those events described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information.

68.     To discharge their duties, the officers, and directors of Icahn Enterprises GP were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers, and directors of Icahn Enterprises GP were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, the United States, and pursuant to Icahn Enterprises' own Code of Business Conduct and Ethics, and Audit Committee Charter;

(b)　　conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's units;

(c)　　remain informed as to how Icahn Enterprises GP conducted Icahn Enterprises operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)　　establish and maintain systematic and accurate records and reports of the business and internal affairs of Icahn Enterprises, Icahn Enterprises GP, and Icahn Enterprises Holdings  and procedures for the reporting of the business and internal affairs to the Icahn Enterprises Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)　　maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Icahn Enterprises' operations would comply with all laws and Icahn Enterprise's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's unitholders would be accurate;

(f)　　exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)　　refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

69.     Each of the Individual Defendants further owed to Icahn Enterprises and its unitholders the duty of loyalty requiring that each favor Icahn Enterprises' interest and that of its unitholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

70.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Icahn Enterprises, and/or Icahn Enterprises GP and were at all times acting within the course and scope of such agency.

71.     Because of their advisory, executive, managerial, and directorial positions with Icahn Enterprises GP, each of the Individual Defendants had access to adverse, non-public information about the Company.

72.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Icahn Enterprises.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

73.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants

caused the Company to conceal the true facts as alleged herein.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

74.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, and waste of corporate assets; (ii) conceal adverse information concerning the Company's operations, financial condition, competitors, future business prospects and internal controls; and (iii) artificially inflate the Company's stock price.

75.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or with gross negligence to inflate its net asset value and, make material misrepresentations of facts, conceal material facts, fail to correct such misrepresentations, and violate applicable laws. During the Relevant Period, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did conceal the fact that the Company was inflating its net asset value. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.  Because the actions described herein occurred under the authority and approval of the Board, each of the Individual Defendants, who are directors of Icahn Enterprises GP, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

76.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with

actual or constructive knowledge of the primary wrongdoing, either took direct part in or substantially assisted the accomplishment of that wrongdoing and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

77.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Icahn Enterprises and was at all times acting within the course and scope of such agency.

## CODE OF ETHICS AND BUSINESS CONDUCT

78.     Pursuant to the Company's Code of Ethics and Business Conduct (the "Code of Ethics"), the conduct of all the Company's officers, directors, and employees is governed by the Code of Ethics.

79.     The Code of Ethics governs Icahn Enterprises, Icahn Enterprises GP, its subsidiary limited partnership, and Icahn Enterprises Holdings

80.     The Code of Ethics provides in relevant part, as to "Purpose," that:

(a)     Promote honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest;

(b) promote full, fair, accurate, timely and understandable disclosure in reports an documents that the Company files with, or submits to, the Securities and Exchange Commission (the "SEC" and in other public communications made by the Company;

(c) promote compliance with applicable governmental law, rules and regulations;

(d) promote the protection of Company assets, including corporate opportunities and
confidential information

(e) promote fair dealing practices;

(f) deter wrongdoing; and

(g) ensure accountability for adherence to the Code.

…

All employes should conduct their affairs honestly and strive to observe the highest standards of personal, professional, and business ethics.

81.     The Code of Ethics provides in relevant part, as to "Conflicts of Interest," that:

Employees must always act in the best interest of the Company when conducting Company business. A conflict of interest occurs when an individual's personal interest interferes with the performance of that individual's duties in a manner that is detrimental to the interests of the Company as a whole. A conflict situation can arise when an Employee takes actions or has interests that may make it difficult to perform his or her Company work objectively and effectively. Conflicts of interests also arise when an Employee, or a member of his or her family, receives improper personal benefits (such as excessive gifts or entertainment provided by persons seeking to do business with the Company) as a result of his or her position in the Company. Such conflicts of interests can undermine our business judgement and our responsibility to the Company and threaten the Company's business and reputation.

82.     The Code of Ethics provides in relevant part, as to "Disclosure," that:

The Company's periodic reports and other documents filed with the SEC, including all financial statements and other financial information, must comply with appliable federal securities laws and SEC rules.

Each Employee who contributes in any way to the preparation or verification of the Company's financial statements and other financial information must ensure that the Company's books, records, and accounts are accurately maintain. Each Employee must cooperate fully with the Company's Accounting Department, as well as the Company's independent public accountants and counsel.

Each Employee who is involved in the Company's disclosure process must:

(a)     be familiar with and comply with the Company's disclosure controls and procedures and its internal; control over financial reporting; and

(b)     take all necessary steps to ensure that all filings with the SEC and all other public communications about the financial and business condition of the Company with respect to matters within such Employee's areas of responsibility provide full, fair, accurate timely and understandable disclosure of such matters.

83.     The Code of Ethics provides in relevant part, as to "Compliance with Laws, Rules & Regulations" that:

> Employees are required to comply fully with all laws, rules and regulations affecting the Company's business and its conduct in business matters.
>
> Although not all Employees are expected to know the details of all applicable laws, rules, and regulations, it is important to know enough to determine when to seek advice from the appropriate staff member. Questions about compliance should be addressed to an attorney in the Law Department.

84.     The Code of Ethics provides in relevant part, as to "Accounting Matters," that:

> The CEO and each senior financial officer of the Company shall promptly bring to the attention of the Audit Committee of the Board of Directors any information he or she may have concerning (a) significant deficiencies in the design or operation of internal control over financial reporting which could adversely affect the Company's ability to record, process, summarize and report financial data or (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's financial reporting, disclosures or internal control over financial reporting.

85.     The Code of Ethics provides in relevant part, as to "Fair Dealing," that:

> No Employee should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts, or any other unfair dealing practices in violation of applicable law or contractual obligations.

86.     The Code of Ethics provides in relevant part, as to "Responding to Improper Conduct," that:

> If an employee violates the Company's Code, he or she will be subject to disciplinary action. Supervisors and managers of a disciplined Employee may also be subject to disciplinary action for their failure to properly oversee an Employee's conduct, or for retaliation against an Employee who reports a violation(s)
>
> The Company's response to misconduct will depend upon a number of factors including whether the improper behavior involved illegal conduct. Disciplinary action may include, but is not limited to, reprimands and warnings, probation, suspension, demotion, reassignment, reduction in salary or immediate termination.

- 29 -

Employees should be aware that certain actions and omissions prohibited by the Code might be crimes that could lead to individual criminal prosecution and, upon conviction, to fines and imprisonment.

87.     In violation of the Code of Ethics, the Individual Defendants (as key officers and as members of Icahn Enterprises GP's Board) conducted little, if any, oversight of the Company's internal controls over public reporting of the Individual Defendants' schemes to artificially inflate the Company's stock, issue materially false and misleading statements to the public and facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, and unjust enrichment. In violation of the Code of Ethics, the Individual Defendants consciously disregarded their duties to (1) comply with the applicable laws and regulations, (2) protect corporate assets, (3) avoid using corporate opportunities for personal gain, (4) avoid conflicts of interest, (5) report violations of the Code of Ethics, (6) appropriately maintain the Company's books, records, accounts, and financial statements, and (7) make accurate filings with the SEC.

## CHARTER OF THE AUDIT COMMITTEE OF THE BOARD OF DIRECTORS OF ICAHN ENTERPRISES G.P., INC.

88.     Pursuant to the Charter of the Audit Committee of the Board of Directors of Icahn Enterprises GP (the "Charter"), which applies to the Company, the purpose, membership, and duties of the Audit Committee are set forth in the charter.

89.     The Charter provides, as to "Purposes," that:

The purposes of the Committee are to assist the Board in overseeing:

(i)     the quality and integrity of the Partnership's financial statements.

(ii)    the qualifications, independence and compensation of the Partnership's independent auditor.

(iii)   the performance of the Partnership's internal audit function and independent auditor, and

(iv)    the Partnership's compliance with legal and regulatory requirements applicable to financial reporting

90.    The Charter provides, as to "Membership," that:

The committee shall consist of at least three board members. The members of the Committee shall be appointed by the Board, which shall recommend for Committee membership such directors as it believes are qualified. Members of the Committee shall serve at the pleasure of the Board and shall serve and for such terms as the Board may determine.

Each member of the Board shall be independent in accordance with the requirements of Rule 10A-3 of the Securities Exchange Act of 1934 and the rules of the NASDAQ Stock Market ("NASDAQ"). No member of the Committee can have participated in the preparation of the Partnership's or any of its subsidiaries' financial statements at any time during the past three years.

While there is no limit on the number of public company audit committees on which a director may serve, if a director serves on more than three public company audit committees in addition to this Audit Committee (i.e., more than four public company audit committees in total), his or her service on this Audit Committee shall be subject to the Board's determination that such simultaneous service on such other audit committees will not impair his or her ability to effectively serve on this Audit Committee.

Each Member of the Committee shall obtain and maintain any license and other approval required by any state or local government authority in respect of the Partnership.

Each member of the Committee must be able to read and understand fundamental financial statements, including the Partnership's balance sheet, income statement and cash flow statement. In accordance with the rule of NASDAQ, at least one member of the Committee shall have past employment experience in finance or accounting, requisite professional certification in accounting, or any other comparable experience or background which results in his or her financial sophistication, including being or having been a chief executive officer, chief financial officer or other senior officer with financial oversight responsibilities. A person who satisfies the definition of "audit committee financial; expert" set forth in Item 407(d)(5)(ii) of Regulation S-K will be presumed to have financial sophistication.

91.    The Charter provides, as to "Duties and Responsibilities" that:

### *Reports to Board; Review of Committee Performance and Charter*

(a)     The Committee shall report regularly to the Board and review with the Board any issues that arise with respect to:

(i)     the quality or integrity of the Partnership's financial statements;

(ii)    the performance and independence of the Partnership's independent auditor;

(iii)   the performance of the Partnership's internal audit function; and

(iv)    the partnership's compliance with legal and regulatory requirements.

(b)     The Committee shall undertake and review with the Board an annual performance evaluation of the Committee, which shall compare the performance of the Committee with the requirements of this Charter and set forth the goals and objectives of the Committee for the upcoming year. This performance evaluation by the committee shall be conducted in such manner as the Committee deems appropriate. The reports to the Board may take the form of an oral report by the chairperson of the Committee or any other member of the Committee designated by the Committee to make this report.

### *Financial Reporting and Disclosure Matters*

(i)     The committee shall review and discuss with management and the independent auditor:

(i) prior to the annual audit, the scope, planning and staffing of the annual audit;

(ii) the Partnership's annual audited financial statements and quarterly financial statements, including the Partnership's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations" and the results of the independent auditor's reviews of the quarterly financial statements;

(iii) significant issues regarding accounting and auditing principles and practices and financial statement presentations, including all critical accounting policies and estimates, any significant changes in the Partnership's selection issues as to the adequacy of the Partnership's internal controls and any special audit steps adopted in light of material control deficiencies;

(iv) analyses prepared b management and/or the independent auditor setting forth significant financial reporting issues and judgements made in connection with the

preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements.

(v)the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements;

(vi) any significant changes to the Partnership's auditing and accounting principles and practices suggested by the independent auditor, internal audit personnel or management; and

(vii) managements internal control report prepared in accordance with rules promulgated by the SEC pursuant to Section 404 of the Sarbanes-Oxley Act.
...

(j) The Committee shall recommend to the Board whether the annual audited financial statements should be included in the Partnership's Form 10-K.

(k) The Committee shall review and discuss, as appropriate, with management the Partnership's practices regarding significant press releases and the provision of financial information and earnings guidance by management to analysts and ratings agencies.

(l)  the committee shall periodically review and discuss with management the Partnership's guideline and polices with respect to the process by which the Partnership undertakes risk assessment and risk management, including discussion of the Partnership's major financial risk exposures and the steps management has taken to monitor and control such exposures.

(m) The Committee shall review and discuss with the CEO and CFO the procedures undertaken in connection with the CEO and CFO certifications for Form 10-Ks and Form 10-Qs including their evaluation of the Partnership's disclosure controls and procedures and internal controls.

(n) The Committee shall annually obtain from the independent auditor assurance that the audit was conducted in a manner consistent with Section 10A of the Exchange Act.

92.    In violation of the Charter, the Individual Defendants who are members of the

Boards of Icahn Enterprises GP and Icahn Enterprises, conducted little, if any, oversight of the

Company's internal controls over public reporting of financial statements and of the Company's

engagement in the Individual Defendants' schemes to issue materially false and misleading

statements to the public and the other schemes alleged herein, and facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, and waste of corporate assets. In violation of the Corporate Guidelines, the Individual Defendants who are members of the Board, *inter alia*, consciously disregarded their duties of loyalty, ethics, to act in the best interests of the Company, to use their free access to management to obtain all information necessary to fulfill their duties, to oversee the conduct of the business of Icahn Enterprises and to evaluate whether the business of the Company is being properly managed, to review and, where appropriate, approve material changes in the auditing and accounting principles and practices to be used in the preparation of the financial statements of Icahn Enterprises, and to properly evaluate themselves and the senior management of Icahn Enterprises.

## INDIVIDUAL DEFENDANTS' MISCONDUCT

### Background on Icahn Enterprises

93.    Icahn Enterprises is master limited partnership with subsidiaries engaged in investment, energy automotive, food packaging, real estate, home fashion, and pharma.

94.    The Company conducts its activities so not to be deemed an investment company under the Investment Company Act of 1940. Therefore, the Company does not invest more than 40% of its total assets in investment securities. Furthermore, the Company does not invest or intend to invest in securities as its primary business.

95.    In addition, the Company intends to structure its investments to be taxed as a partnership instead of a corporation under the Internal Revenues Services' applicable publicly traded partnership rules.

96.    As the Company states in the 2022 10-K as to "Business Description" that:

Icahn Enterprises began as American Real Estate Partners L.P. in 1987 and currently operates a portfolio of seven diversified reporting segments. With the exception of our Investment segment, our operating segments primarily comprise independently operated businesses that we have obtained a controlling interest in through execution of our business strategy. Our Investment segment derives revenues from gains and losses from investment transactions. Our other operating segments derive revenues principally from net sales of various products, primarily within our Energy and Automotive segments, which together accounted for the significant majority of our consolidated net sales for each of the three years in the period ended December 31, 2021. Our other operating segments' revenues are also derived through various other revenue streams which primarily consists of automotive services and real estate leasing operations. The majority of our consolidated revenues are derived from customers in the United States. Our Food Packaging segment, and prior to August 2019, our Mining segment, accounted for the majority of our consolidated revenues derived from customers outside the United States.

97.     As revealed by the Report, the Company's last reported year-end net asset value "[wa]s inflated by at least 22% due to a combination of overly aggressive marks on [Icahn Enterprises] less liquid/private investments and continued year to date underperformance."

98.     The Company also operates a "ponzi-like economic structure" regarding the Company's high dividend yield. As the Report explained, the dividend yield is unsupported by the Company's cash flow and investment performance. Poor returns on investments and inflexible financial structure do not support the dividends paid out to investors. As such, the dividend yield can only be supported by using money brought in from new investors to pay out the dividends to old investors.

99.     The Company's business allocation can be summarized by the below illustration:

| Revenues | Net Income (Loss) From Continuing Operations | Net Income (Loss) From Continuing Operations Attributable to Icahn Enterprises |
| --- | --- | --- |

| | Year Ended December 31, | | | Year Ended December 31, | | | Year Ended December 31, | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2021 | 2020 | 2019 | 2021 | 2020 | 2019 | 2021 | 2020 | 2019 |
| | | | | (in millions) | | | | | |
| Investment | $ 202 | $ (1,249) | $ (1,414) | $ (32) | $ (1,447) | $ (1,543) | $ (16) | $ (765) | $ (775) |
| Holding Company | (25) | (70) | (261) | (402) | (476) | (599) | (402) | (476) | (599) |
| ther Operating Segments: | | | | | | | | | |
| Energy | 7,327 | 3,966 | 6,385 | 29 | (327) | 314 | (5) | (194) | 246 |
| Automotive | 2,360 | 2,465 | 2,895 | (260) | (198) | (197) | (260) | (198) | (197) |
| Food Packaging | 402 | 403 | 377 | (2) | 4 | (22) | (2) | 4 | (17) |
| Real Estate | 96 | 98 | 103 | (8) | (16) | 16 | (8) | (16) | 16 |
| Home Fashion | 197 | 190 | 186 | (8) | (7) | (17) | (8) | (7) | (17) |
| Pharma | 85 | 3 | — | (3) | (1) | — | (3) | (1) | — |
| Metals | 684 | 317 | 341 | 186 | — | (22) | 186 | — | (22) |
| Mining | — | — | 382 | — | — | 311 | — | — | 299 |
| ther operating segments | 11,151 | 7,442 | 10,669 | (66) | (545) | 383 | (100) | (412) | 308 |
| Consolidated | $ 11,328 | $ 6,123 | $ 8,994 | $ (500) | $ (2,468) | $ (1,759) | $ (518) | $ (1,653) | $ (1,066) |

### False and Misleading Statements Issued During the Relevant Period

***August 2, 2018 Press Release***

100.    The Relevant Period begins on August 2, 2018. On that day, the Company issued a press release entitled "Icahn Enterprises L.P. Reports Second Quarter 2018 Financial Results" The press release stated:

> Icahn Enterprises L.P. (NASDAQ:IEP) is reporting second quarter 2018 revenues of $3.6 billion and net income attributable to Icahn Enterprises of $309 million, or $1.70 per depositary unit, including $164 million from continuing operations, or

$0.90 per depositary unit. For the three months ended June 30, 2017 revenues were $4.5 billion and net income attributable to Icahn Enterprises was $1.6 billion, or $9.51 per depositary unit, including $1.5 billion from continuing operations, or $9.20 per depositary unit. The prior year period includes a $1.0 billion gain, net of tax, from the sale of ARL in June 2017. For the three months ended June 30, 2018, Adjusted EBITDA attributable to Icahn Enterprises was $356 million compared to $288 million for the three months ended June 30, 2017. For the three months ended June 30, 2018, Adjusted EBIT attributable to Icahn Enterprises was $270 million compared to $195 million for the three months ended June 30, 2017.

For the six months ended June 30, 2018, revenues were $6.7 billion and net income attributable to Icahn Enterprises was $446 million, or $2.48 per depositary unit, including $272 million from continuing operations, or $1.52 per depositary unit. For the six months ended June 30, 2017 revenues were $7.0 billion and net income attributable to Icahn Enterprises was $1.5 billion, or $9.77 per depositary unit, including $1.5 billion from continuing operations, or $9.23 per depositary unit. The prior year period includes a $1.0 billion gain, net of tax, from the sale of ARL in June 2017. For the six months ended June 30, 2018, Adjusted EBITDA attributable to Icahn Enterprises was $664 million compared to $468 million for the six months ended June 30, 2017. For the six months ended June 30, 2018, Adjusted EBIT attributable to Icahn Enterprises was $490 million compared to $287 million for the six months ended June 30, 2017.

For the six months ended June 30, 2018 indicative net asset value increased to $8.4 billion compared to $7.9 billion as of December 31, 2017.

***February 28, 2019 Press Release***

101.    The Company issued a press release on February 28, 2019, titled "Icahn Enterprises

L.P. Report Fourth Quarter and Full Year 2018 Financial Results." The press release stated:

Icahn Enterprises L.P. (NASDAQ:IEP) is reporting for the year ended December 31, 2018, revenues of $11.8 billion and net income attributable to Icahn Enterprises of $1.5 billion, or $11.46 per depositary unit, including a loss of $213 million from continuing operations, or $1.16 per depositary unit. For the year ended December 31, 2017, revenues were $12.6 billion and net income attributable to Icahn Enterprises was $2.4 billion, or $14.80 per depositary unit, including $2.3 billion from continuing operations, or $13.84 per depositary unit. For the year ended December 31, 2018, Adjusted EBITDA attributable to Icahn Enterprises was $561 million compared to $642 million for the year ended December 31, 2017. For the year ended December 31, 2018, Adjusted EBIT attributable to Icahn Enterprises was $264 million compared to $323 million for the year ended December 31, 2017.

- 37 -

For the fourth quarter of 2018, revenues were $2.8 billion and net income attributable to Icahn Enterprises was $935 million, or $8.03 per depositary unit, including a loss of $434 million from continuing operations, or $2.28 per depositary unit. For the three months ended December 31, 2017, revenues were $2.5 billion and net income attributable to Icahn Enterprises was $298 million, or $1.76 per depositary unit, including $279 million from continuing operations, or $1.65 per depositary unit. For the three months ended December 31, 2018, Adjusted EBITDA attributable to Icahn Enterprises was a loss of $104 million compared to a loss of $96 million for the three months ended December 31, 2017. For the three months ended December 31, 2018, Adjusted EBIT attributable to Icahn Enterprises was a loss of $176 million compared to a loss of $177 million for the three months ended December 31, 2017.

For the year ended December 31, 2018, indicative net asset value increased to $8.2 billion compared to $7.9 billion as of December 31, 2017.

102.    The February 28, 2019 press release outlined the history of dividend distribution, stating in relevant part:

**Distribution**

Icahn Enterprises has a long history of endeavoring to return capital to its unit holder by declaring and paying significant and consistent annual distributions. As a reminder-

Icahn Enterprises declared annual distributions of $8.00 per depository unit for fiscal year 2019

Icahn Enterprises declared annual distributions of $7.00 per depository unit for fiscal year 2018

Icahn Enterprises declared annual distributions of $6.00 per depository unit for fiscal year 2017

Icahn Enterprises declared annual distributions of $6.00 per depository unit for fiscal year 2016

Icahn Enterprises declared annual distributions of $6.00 per depository unit for fiscal year 2015

Icahn Enterprises declared annual distributions of $6.00 per depository unit for fiscal year 2014

- 38 -

Most recently, on February 26, 2019, the Board of Directors of the general partner of Icahn Enterprises declared a quarterly distribution in the amount of $2.00 per depository unit ($8.00 per unit annualized) which will be paid on or about April 17, 2019 to depository unitholders of record at the close of business on March 11, 2019. Depository unitholder will have until April 8, 2019 to make an election to receive either cash or additional depository units; if a holder does not make an election, it will automatically be deemed to have elected to receive the dividend in cash. Depository unit holders who elect to receive additional depository units will receive units valued at the volume weighted average trading price of the units on NASDAQ during the 5 consecutive trading days ending April 15, 2019. No fractional depository units will be issued pursuant to the distribution payment. Icahn Enterprises will make a cash payment in lieu of issuing fractional depository units to any holders electing to receive depository units. Any holders that would only be eligible to receive a fraction of a depository unit based on the above calculation will receive a cash payment.

Icahn Enterprises L.P., a master limited partnership, is a diversified holding company engaged in eight primary business segments: Investment, Energy, Automotive, Food Packaging, Metals, Real Estate, Home Fashion and Mining.

### *February 28, 2020 Press Release*

103.    The Company issued a press release on February 28, 2020, titled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2019 Financial Results." The press release addressed the decrease in net asset value, and the $2.00 per unit dividend declared. The press release stated that:

Icahn Enterprises L.P. (NASDAQ:IEP) is reporting fourth quarter 2019 revenues of $2.6 billion and net loss attributable to Icahn Enterprises of $157 million, or $0.74 per depositary unit, including a loss from continuing operations of $149 million, or $0.70 per depositary unit. For the three months ended December 31, 2018, revenues were $2.8 billion and net income attributable to Icahn Enterprises was $930 million, or $8.01 per depositary unit, including a loss from continuing operations of $439 million, or $2.30 per depositary unit. For the three months ended December 31, 2019, Adjusted EBITDA attributable to Icahn Enterprises was $111 million compared to $(108) million for the three months ended December 31, 2018. For the three months ended December 31, 2019, Adjusted EBIT attributable to Icahn Enterprises was $22 million compared to $(188) million for the three months ended December 31, 2018.

For the year ended December 31, 2019 revenues were $9.0 billion and net loss attributable to Icahn Enterprises was $1.1 billion, or $5.38 per depositary unit, including a loss from continuing operations of $1.1 billion, or $5.23 per depositary unit. For the year ended December 31, 2018, revenues were $11.8 billion and net income attributable to Icahn Enterprises was $1.5 billion, or $11.33 per depositary unit, including a loss from continuing operations of $238 million, or $1.29 per depositary unit. For the year ended December 31, 2019, Adjusted EBITDA attributable to Icahn Enterprises was $(462) million compared to $557 million for the year ended December 31, 2018. For the year ended December 31, 2019, Adjusted EBIT attributable to Icahn Enterprises was $(818) million compared to $224 million for the year ended December 31, 2018.

For the year ended December 31, 2019, indicative net asset value decreased to $7.07 billion compared to $8.15 billion as of December 31, 2018.

On February 26, 2020, the Board of Directors of the general partner of Icahn Enterprises declared a quarterly distribution in the amount of $2.00 per depositary unit, which will be paid on or about April 28, 2020 to depositary unitholders of record at the close of business on March 20, 2020. Depositary unitholders will have until March 17, 2020 to make an election to receive either cash or additional depositary units; if a unitholder does not make an election, it will automatically be deemed to have elected to receive the distribution in cash. Depositary unitholders who elect to receive additional depositary units will receive units valued at the volume weighted average trading price of the units on NASDAQ during the 5 consecutive trading days ending April 24, 2020. No fractional depositary units will be issued pursuant to the distribution payment. Icahn Enterprises will make a cash payment in lieu of issuing fractional depositary units to any unitholders electing to receive depositary units. Any unitholders that would only be eligible to receive a fraction of a depositary unit based on the above calculation will receive a cash payment.

***February 26, 2021 Press Release***

104.    The Company issued a press release on February 26, 2021, entitled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2020 Financial Results" The press release did not address the net asset value of the Company but did discuss the $2.00 per unit dividend declared. The press release stated that:

Icahn Enterprises L.P. (Nasdaq:IEP) is reporting fourth quarter 2020 revenues of $2.8 billion and net income attributable to Icahn Enterprises of $146 million, or $0.61 per depositary unit. For the three months ended December 31, 2019, revenues

were $2.6 billion and net loss attributable to Icahn Enterprises was $157 million, or a loss of $0.74 per depositary unit, including a loss of $149 million from continuing operations, or a loss of $0.70 per depositary unit. For the three months ended December 31, 2020, Adjusted EBITDA attributable to Icahn Enterprises was $420 million compared to $111 million for the three months ended December 31, 2019. For the three months ended December 31, 2020, Adjusted EBIT attributable to Icahn Enterprises was $328 million compared to $22 million for the three months ended December 31, 2019.

For the year ended December 31, 2020, revenues were $6.1 billion and net loss attributable to Icahn Enterprises was $1.7 billion, or a loss of $7.33 per depositary unit. For the year ended December 31, 2019, revenues were $9.0 billion and net loss attributable to Icahn Enterprises was $1.1 billion, or a loss of $5.38 per depositary unit, including a loss of $1.1 billion from continuing operations, or $5.23 per depositary unit. For the year ended December 31, 2020, Adjusted EBITDA attributable to Icahn Enterprises was $(738) million compared to $(462) million for the year ended December 31, 2019. For the year ended December 31, 2020, Adjusted EBIT attributable to Icahn Enterprises was $(1.1) billion compared to $(818) million for the year ended December 31, 2019.

On February 24, 2021, the Board of Directors of the general partner of Icahn Enterprises declared a quarterly distribution in the amount of $2.00 per depositary unit, which will be paid on or about April 28, 2021 to depositary unitholders of record at the close of business on March 26, 2021. Depositary unitholders will have until April 16, 2021 to make an election to receive either cash or additional depositary units; if a holder does not make an election, it will automatically be deemed to have elected to receive the distribution in additional depositary units. Depositary unitholders who elect to receive (or are deemed to have elected to receive) additional depositary units will receive units valued at the volume weighted average trading price of the units on Nasdaq during the 5 consecutive trading days ending April 23, 2021. No fractional depositary units will be issued pursuant to the distribution payment. Icahn Enterprises will make a cash payment in lieu of issuing fractional depositary units to any holders electing to receive depositary units. Any holders that would only be eligible to receive a fraction of a depositary unit based on the above calculation will receive a cash payment. For distributions declared by the Board in prior quarters, the default election (for holders that did not make an election) was a cash distribution. The default election (for holders that do not make an election) for the distribution to be paid on or about April 28, 2021 will be a distribution paid in additional depository units, a change from prior quarters.

*February 25, 2022 Press Release*

- 41 -

105.    The Company issued a press release on February 25, 2022, titled "Icahn Enterprises L.P. Reports Fourth Quarter and Full Year 2021 Financial Results." The press release addressed the increase in net asset value, and the $2.00 per unit dividend declared. The press release stated that:

Icahn Enterprises L.P. (Nasdaq: IEP) is reporting fourth quarter 2021 revenues of $2.3 billion and net loss attributable to Icahn Enterprises of $396 million, or a loss of $1.72 per depositary unit. For the three months ended December 31, 2020, revenues were $2.8 million and net income attributable to Icahn Enterprises was $146 million, or $0.61 per depositary unit. For the three months ended December 31, 2021, Adjusted EBITDA attributable to Icahn Enterprises was ($443) million compared to $423 million for the three months ended December 31, 2020.

For the year ended December 31, 2021, revenues were $11.3 billion and net loss attributable to Icahn Enterprises was $518 million, or a loss of $2.32 per depositary unit. For the year ended December 31, 2020, revenues were $6.1 billion and net loss attributable to Icahn Enterprises was $1.7 billion, or a loss of $7.33 per depositary unit. For the year ended December 31, 2021, Adjusted EBITDA attributable to Icahn Enterprises was $273 million compared to ($735) million for the year ended December 31, 2020.

The full-year 2021 results were negatively impacted by losses of $1.3 billion on IEP's Investment segment short positions (used to hedge our long positions). Other losses included $435 million of RINs expense and $205 million of Automotive transformation losses and inventory write-downs.

For the twelve months ended December 31, 2021, indicative net asset value increased by $1.6 billion to $5.1 billion despite the headwinds mentioned above. The change in indicative net asset value includes, among other things, changes in the fair value of certain subsidiaries which are not included in our GAAP earnings reported above. In addition, in the third and fourth quarters of 2021, we revised how we estimate the fair value of our Automotive segment's owned real estate to reflect the improvement of its real estate leasing operations and its Services business to reflect current market multiples which better reflects the fair value of the assets, both of which contributed to the positive change in indicative net asset value.

On February 23, 2022, the Board of Directors of the general partner of Icahn Enterprises declared a quarterly distribution in the amount of $2.00 per depositary unit, which will be paid on or about April 27, 2022, to depositary unitholders of record at the close of business on March 18, 2022. Depositary unitholders will have until April 14, 2022, to make a timely election to receive either cash or additional

depositary units. If a unitholder does not make a timely election, it will automatically be deemed to have elected to receive the distribution in additional depositary units. Depositary unitholders who elect to receive (or who are deemed to have elected to receive) additional depositary units will receive units valued at the volume weighted average trading price of the units during the five consecutive trading days ending April 22, 2022. Icahn Enterprises will make a cash payment in lieu of issuing fractional depositary units to any unitholders electing to receive (or who are deemed to have elected to receive) depositary units.

### February 24, 2023 Press Release

106.    On February 24, 2023, the Company issued a press release titled "Icahn Enterprise

L.P. Reports Fourth Quarter 2022 Financial Results." The press release addressed the increase in

net asset value, and the $2.00 per unit dividend declared. The press release stated that:

Icahn Enterprises L.P. (Nasdaq:IEP) is reporting revenues of $14.1 billion and net loss attributable to Icahn Enterprises of $183 million, or $0.57 per depositary unit, for the twelve months ended December 31, 2022. For the twelve months ended December 31, 2021, revenues were $11.3 billion and net loss attributable to Icahn Enterprises was $518 million, or $2.32 per depositary unit. Adjusted EBITDA attributable to Icahn Enterprises was $758 million for the twelve months ended December 31, 2022, compared to $273 million for the twelve months ended December 31, 2021.

Fourth quarter 2022 revenues were $3.1 billion and net loss attributable to Icahn Enterprises was $255 million, or a loss of $0.74 per depositary unit. For the three months ended December 31, 2021, revenues were $2.3 billion and net loss attributable to Icahn Enterprises was $396 million, or a loss of $1.72 per depositary unit. For the three months ended December 31, 2022, Adjusted EBITDA attributable to Icahn Enterprises was a loss of $54 million compared to a loss of $443 million for the three months ended December 31, 2021.

For the twelve months ended December 31, 2022, indicative net asset value increased by $522 million to $5.6 billion. The change in indicative net asset value includes, among other things, changes in the fair value of certain subsidiaries which are not included in our GAAP earnings reported above.

On February 22, 2023, the Board of Directors of the general partner of Icahn Enterprises declared a quarterly distribution in the amount of $2.00 per depositary unit, which will be paid on or about April 19, 2023, to depositary unitholders of record at the close of business on March 13, 2023. Depositary unitholders will have until April 6, 2023, to make a timely election to receive either cash or additional

depositary units. If a unitholder does not make a timely election, it will automatically be deemed to have elected to receive the distribution in additional depositary units. Depositary unitholders who elect to receive (or who are deemed to have elected to receive) additional depositary units will receive units valued at the volume weighted average trading price of the units during the five consecutive trading days ending April 14, 2023. Icahn Enterprises will make a cash payment in lieu of issuing fractional depositary units to any unitholders electing to receive (or who are deemed to have elected to receive) depositary units.

107.    The above statements identified in ¶¶ 100-106 were materially false and/or misleading, and failed to disclose material adverse fact about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's was artificially inflating its net asset value; (2) the Company was using money from new purchases of the Company's units to pay the dividends to old investors in a "ponzi-like" scheme; (3) as a result, the Company would be subject to increased criminal and/or regulatory scrutiny; (4) consequently, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis; and (5) the Company failed to maintain internal controls

## The Truth Emerges

### *Hindenburg Research Report*

108.    On May 2, 2023, short-seller firm Hindenburg Research published The Report, revealing that Icahn Enterprises' "last reported indicative year-end [net asset value] of $5.6 billion is inflated by at least 22%." Furthermore, The Report further found that the Company operates with a "ponzi-like economic structure" and "has been using money taken in from new investors to pay out dividends to old investors." The Report stated:

Icahn Enterprises (IEP) is an ~$18 billion market cap holding company run by corporate raider and activist investor Carl Icahn, who, along with his son Brett, own approximately 85% of the Company.

> ***Our research has found that IEP units are inflated by 75%+*** due to 3 key reasons:
> (1) IEP trades at a 218% premium to its last reported   net asset value (NAV), vastly
> higher than all comparable (2) we've uncovered clear evidence of inflated valuation
> marks for IEP's less liquid and private assets (3) the company has suffered
> additional performance losses year to date following its last disclosure.
>
> Most closed-end holding companies trade around or at a discount to their NAVs.
> For comparison, vehicles run by other star managers, like Dan Loeb's Third Point
> and Bill Ackman's Pershing Square, trade at discounts of 14% and 35% to NAV,
> respectively.
>
> We further compared IEP to all 526 U.S.-based closed end funds (CEFs) in
> Bloomberg's database. Icahn Enterprises' premium to NAV was higher than all of
> them and more than double the next highest we found.
>
> ***A reason for IEP's extreme premium to NAV, based on a review of retail investor-***
> ***oriented media, is that average investors are attracted to (a) IEP's large dividend***
> ***yield*** and (b) the prospect of investigating alongside Wall Street legend Carl Icahn.
> Institutional investors have virtually no ownership is IEP.

(Emphasis added)

109.    The Report also discussed the Company's dividend yield and the "ponzi-like"

scheme, stating:

> ***Icahn Enterprises' current dividend yield is ~15.8%, making it the highest***
> ***dividend yield of any U.S. large cap company by far***, with the next closest at ~9.9%
> As a result of the company's elevated unit price, its annual dividend rate equates to
> as absurd 50.5% of last reported indicative net asset value.
>
> ***The company's outlier dividend is made possible (for now) because Carl Icahn***
> ***owns roughly 85% of IEP and has been largely taking dividends in units (instead***
> of cash), reducing the overall cash outlay required to meet the dividend payment
> for remaining unitholders.
>
> ***The dividend is entirely unsupported by IEP's cash flow and investment***
> ***performance, which has been negative for years. IEP's investment portfolio has***
> ***lost ~53% since 2014. The company's free cash flow figures show IEP has***
> ***cumulatively burned -$4.9 billion over the same period.***
>
> Despite its negative financial performance, IEP has raised its dividend 3 times since
> 2014. IEP's most recent dividend increase came in 2019, when it raised quarterly

distributions from $1.75 50 $2.00 per unit. IEP's free cash flow was negative $1.7 billion in the same year.

Given that the investment and operating performance of IEP has burned billions in capital, *the company has been forced to support its dividend using regular open market sales of IEP units through at-the-market (ATM) offerings, totaling $1.7 billion since 2019.*

*In brief, Icahn has been using money taken in from new investors to pay out dividends to old investors. Such ponzi-like economic structures are sustainable only to the extent that new money is willing to risk being the last one "holding the bag."*

Supporting this structure is Jeffries, the only large investment bank with research coverage on IEP. It has continuously placed a "buy" rating on IEP units. In one of the worst cases of sell-side research malpractice we've seen, Jeffries' research assumes in all cases, even in its bear case, that IEP's dividend will be safe "into perpetuity", despite providing no support for that assumption.

Since 2019, one bank has run all of IEP's $1.7 billion in ATM offerings: Jeffries. In essence, Jeffries is luring in retail investors through its research arm under the guise of IEP's 'safe' dividend, while also selling billions in IEP units through its investment banking arm to support the very same dividend.

(Emphasis added)

110.     The Report continued discussing the inflated net asset value, stating:

Adding to evidence of IEP's unsustainability, *we estimate that IEP's last reported indicative year-end NAV of $5.6 billion is inflated by at least 22%, due to a combination of overly aggressive marks on IEP's less liquid /private investments and continued year to date underperformance.*

In one example, IEP owns 90% of publicly traded meat packaging business that it valued at $243 million at year-end. The company had a market value of only $89 million at the time. In other words, IEP marked the value of its public company equity holdings 204% above the prevailing public market price.

The mark is even more irregular given that IEP bought over a million shares of the company in December before immediately writing up the value of those shares by ~194% in the same month.

In another instance, IEP marked its "Automotive Parts" division at $381 million in December 2022. Its key subsidiary declared bankruptcy a month later.

- 46 -

IEP reported $455 million in "real estate holdings" in its most recent quarter. The reported values in this segment have been remarkably stable for years despite declining net income and despite including (i) the Trump Plaza in Atlantic City, which was razed to the ground in 2021' (ii) a country club that became nearly insolvent in 2020 before ownership reverted to its members in 2021; and (iii) a lack of transparency on other assets and valuations.

The irregular valuation marks fit a pattern: In January of 2020, UBS dropped coverage of IEP citing "lack of transparency" following its research showing marks that were "divergent from their public market values", among other issues.

Beyond aggressive marks, Icahn's liquid portfolio has continued to generate losses. Our analysis of Icahn's latest December 2022 13-F filings indicates that IEP's long holdings have lost ~$471 million in value year to date, despite the S&P gaining ~9.2% in the same time frame.

IEP disclosed that its investment fund had a 47% notional short bet in its December 2022 filings. Given the positive market performance, we estimate this short bet has contributed at least a further $272 million in year-to-date losses.

***Overall, we estimate IEP's current NAV as being closer to 4.4 billion, or 22% lower than its disclosed year-end indicative NAV of $5.6 billion***. The analysis suggests that units currently trade at a 310% premium to NAV, with an annual dividend rate of 64% of NAV.

(Emphasis added)

111.    The Report continued discussing the Company's limited financial flexibility. The

Report stated:

Tightening matters further, IEP is highly levered, with $5.3 billion in Holdco debt and maturities of $ 1.1 billion, $1.35 billion, and $1.35 billion due to 2024, 2025, and 2026, respectively.

IEP's debt covenants limit the company's financial flexibility: IEP is not permitted to incur additional indebtedness and is only allowed to refinance old debt. With interest rates having increased, IEP will need to pay significantly higher interest expenses on future refinancings.

Carl Icahn's ownership in IEP comprises about 85% of his overall net worth, according to Forbes, giving him limited room to maneuver with his own outside

capital. We have assessed that Icahn has little ability or reason to bail out IEP with a capital injection, particularly at such elevated unit prices.

Further underscoring Icahn's limited financial flexibility, he has pledged 181.4 million units, ~60% of his IEP holdings, for personal margin loans. Margin loans are a risky form of debt often reliant on high share (or unit) prices.

Icahn has not disclosed basic metrics around his margin loans like loan to value (LTV), maintenance thresholds, principal amount, or interest rates. We think unitholders deserve this information in order to understand the risk of margin call should IEP unit prices revert toward NAV, a reality we see as inevitable.

Given limited financial flexibility and worsening liquidity, we expect Icahn Enterprises will eventually cut or eliminate its dividend entirely, barring a miracle turnaround in investment performance.

Overall, we think Icahn, a legend of Wall Street, has made a classic mistake of taking on too much leverage in the face of sustained loses: a combination that rarely ends well.

112.    Upon this news, Icahn Enterprise's unit price fell $10.06 per share, or 20%, to close at $40.36 per share on May 2, 2023

### *May 10, 2023 10-Q*

113.    On May 10, 2023, before opening of the market the Company filed its 1Q23 10-Q, Quarterly Report with the SEC for the period ended March 31, 2023. In the report, the Company stated that the U.S. Attorney's Office for the Southern District of New York contacted the Company on May 3, 2023, seeking production of information relating to the Company, and certain of its affiliates,' "corporate governance, capitalization, securities offerings, dividends, valuation, marketing materials, due diligence and other materials." The Company claimed it is "cooperating with the request" and is "providing documents in response to the voluntary request for information." The Company stated:

The U.S. Attorney's office for the Southern District of New York contacted Icahn Enterprises L.P. on May 3, 2023 seeking production of information relating to it

and certain of its affiliates' corporate governance, capitalization, securities offerings, dividends, valuation marketing materials, due diligence and other materials. We are cooperating with the request and are providing documents in response to any voluntary request for information. The U.S. Attorney's office has not made any claims or allegations against us of Mr. Icahn with respect to the foregoing inquiry. We believe that we maintain a strong compliance program and, while no assurances can be made and we are still evaluating the matter, we do not currently believe this inquiry will have material impact on our business, financial condition, results of operation or cash flows.

114.    The 1Q23 10-Q also reported a $226 million charge related to Auto Plus, which

Hindenburg had identified as an overvalued holding in their report:

With respect to our Automotive segment, we have invested significant resources in various initiative to remain competitive and stimulate growth. Despite these efforts, in January 2023, Auto Plus filed the Chapter 11 Cases in the Bankruptcy Court. As a result of this filing, the Company has determined that it no longer controls Auto Plus and has deconsolidated its investment in Auto Plus effective as of January 31, 2023 resulting in a non-cash charge of $226 million recorded in the three months ended March 31, 2023 and determined that out remaining equity investment in Auto Plus in now worth $0

115.    Upon this news, the Company's unit price fell $5.75 per unit, or 15.1%, to close at

$32.22 per share on May 10, 2023.

## DAMAGES TO ICAHN ENTERPRISES

116.    As a direct and proximate result of the Individual Defendants' conduct, the

Company has lost and expended, and will lose and expend, many millions of dollars.

117.    Such expenditures include, but are not limited to, legal fees associated with the

Securities Class Actions filed against the Company and Defendants Icahn, Willetts, Papapostolou,

Cozza, and Cho and the U.S. Attorney's office investigation and action against the Company,

amounts paid to outside lawyers, accountants, and investigators in connection to these actions.

118.    Such costs include, but are not limited to, compensation, bonuses, and benefits paid

to the Individual Defendants who breached their fiduciary duties to the Company.

119.    Such losses also include losses of revenue caused by customers' loss of trust in the Company's business.

120.    As a direct and proximate result of the Individual Defendants' conduct, Icahn Enterprises has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's unit-price in the future due to the Company's and their misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE ALLEGATIONS

121.    Plaintiff brings this action derivatively and for the benefit of Icahn Enterprises to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Icahn Enterprises GP, and unjust enrichment, as well as the aiding and abetting thereof.

122.    Icahn Enterprises is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

123.    Plaintiff is, and has been, an Icahn Enterprises unitholder at all relevant times during the Relevant Period. Plaintiff will adequately and fairly represent the interests of Icahn Enterprises in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

124.    Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

125.   A pre-suit demand on the Board is futile and, therefore, excused. At the time of filing of this action, the Board consists of the following nine Individuals: Defendants Icahn, Willetts, Papapostolou, Barton, Brett, Krongard, Mongillo and Nevin (collectively, the "Director-Defendants"). As well as non-party director Nancy Dunlap ("Dunlap") (collectively, the "Directors") Plaintiff only needs to allege demand futility as to five of the nine Directors that are on the Board at the time this action is commenced.

126.   Demand is excused as to all of the Director-Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of their engagement, either knowingly or recklessly, in the schemes alleged herein, including schemes to make and/or cause the Company to make false and misleading statements and omissions of material fact while inflating net asset value, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the schemes.

127.   In complete abdication of their fiduciary duties, the Director-Defendants either knowingly or recklessly participated in the conduct alleged herein. The fraudulent schemes were intended to make the Company appear more profitable and attractive to investors.  As a result of the foregoing, the Director-Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

128.   Several of the Directors hold positions on a specific Board committee. The Board has one standing committee: the Audit Committee, according to its respective charter, this committee has the following responsibilities:

Audit committee

The role of the Audit Committee (the "Committee") of the Board of Directors of the General Partner (the "Board," and each member thereof a "Director") is to assist the Board in its fulfillment of its responsibility for the oversight of:

- The quality or integrity of the Partnership's financial statements;

- the performance and independence of the Partnership's independent auditor;

- the performance of the Partnership's internal audit function; and

- the Partnership's compliance with legal and regulatory requirements.

129.   Additional reasons that demand on Defendant Icahn is futile follow. Defendant Icahn is Icahn Enterprises GP's Chairman of the Board, and is the Company's controlling shareholder, thus, as the Company admits, he is a non-independent director. Defendant Icahn was Icahn Enterprises' Chairman and controlling shareholder when the Company inflated its net asset value and operated its business with a "ponzi-like dividend scheme," and thus, was ultimately responsible for the conduct of the Company during that time.  Defendant Icahn conducted little, if any, oversight of the Company's internal controls over public reporting of financial statements and of the Company's engagement in the schemes described herein, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Defendant Icahn is also named as a defendant in the Securities Class Actions. Thus, for these reasons, too, Defendant Icahn breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

130.   Additional reasons that demand on Defendant Willetts is futile follow. Defendant Willetts has served as the CEO since November 2021, and as a Company director since June 2021. Thus, as the Company admits, he is a non-independent director. He received significant

compensation from his service as an executive officer and director. Defendant Willetts is beholden to Defendant Icahn. Prior to serving as CEO, Defendant Willetts also served as CFO of Icahn Enterprises. Furthermore, Defendant Willetts also serves as director for Viskase Companies, Inc., CVR Energy Inc. and CVR Partners LP, each of which are indirectly controlled by Defendant Icahn. Moreover, Defendant Willetts conducted little, if any, oversight of the Company's internal controls over public reporting of financial statements and of the Company's engagement in the schemes described herein, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Defendant Willetts is also named as a defendant in the Securities Class Actions. Thus, for these reasons, too, Defendant Willetts breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

131. Additional reasons that demand on Defendant Papapostolou is futile follow. Defendant Papapostolou has served as CFO since November 2021, Chief Accounting Officer since March 2020, and a director since December 2021. Thus, as the Company admits he is a non-independent director. Moreover, Defendant Papapostolou was on the Board at the time the Company was inflating its net asset value and engaged in the "ponzi-like" dividend scheme. Defendant Papapostolou is beholden to Defendant Icahn; Icahn Enterprises provides Defendant Papapostolou with his principal occupation serving as both CFO and Chief Accounting Officer of Icahn Enterprises. Furthermore, from March 2007 to March 2020, Defendant Papapostolou has served in various progressive accounting positions at Icahn Enterprises. Defendant Papapostolou also has served as a director of Viskase Companies, Inc., since April 2020, a company indirectly

controlled by Defendant Icahn. As a director, Defendant Papapostolou conducted little, if any, oversight of the Company's internal controls over public reporting of financial statements and of the Company's engagement in the schemes described herein, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Defendant Papapostolou is also named as a defendant in the Securities Class Actions. Thus, for these reasons, too, Defendant Papapostolou breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

132.    Additional reasons that demand on Defendant Barton is futile follow. Defendant Barton has served as a director since September 2019. Defendant Barton is beholden to Defendant Icahn. Defendant Barton has served as CFO of IEH Auto Parts LLC, a subsidiary of Icahn Enterprises since July 2021, and as both CEO and CFO of IEH Auto Parts LLC since September 2021. IEH Auto Parts LLC provides Defendant Barton with her principal occupation. Furthermore, Director Barton serves on the board and the audit committee for Viskase Companies, Inc., a subsidiary of Icahn Enterprises from May 2016 until January 2022. Furthermore, Defendant Barton served on the board and audit committee of Trump Entertainment Resorts, Inc., a subsidiary of Icahn Enterprises. Defendant Barton was on the Company's Board at the time the Company was inflating its net annual value and engaged in the "ponzi-like" dividend scheme. As director, Defendant Barton conducted little, if any, oversight of the Company's internal controls over public reporting of financial statements and of the Company's engagement in the schemes described herein, consciously disregarded her duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Thus, for these

reasons, too, Defendant Barton breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

133.     Additional reasons that demand on Defendant Brett is futile follow. Defendant Brett has served on the Board since October 2020. The Company admits, in its 2022 10-K, that Defendant Brett is a non-independent director. Director Brett is beholden to Defendant Icahn; Defendant Brett has served in several roles for Icahn Enterprises and its subsidiaries including as a Portfolio Manager for Icahn Capital LP, and a consultant for Icahn Enterprises. Furthermore, Defendant Brett is the son of the controlling shareholder, Defendant Icahn. Defendant Brett was on the Company's Board at the time the Company was engaged in inflating its net annual value and engaged in the "ponzi-like" dividend scheme. As a director, he conducted little if any oversight of the Company's internal control over public reporting of financial statements and of the Company's engagement in the schemes described herein, consciously disregarded his duties to monitor such control over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Thus, for these reasons, too, Defendant Brett breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

134.     Additional reasons that demand on Defendant Krongard is futile follow. Defendant Krongard has served as a director since March 2019. Defendant Krongard was a member of the Audit Committee during the Relevant Period and is thus especially culpable for the Company's false and misleading statements and omissions relating to financial information, including the material omissions that the Company's net asset value was inflated. As a director, and member of

the Audit Committee he conducted little, if any, oversight of the Company's internal controls over public reporting of financial statements and of the Company's engagement in the schemes described herein, consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Thus, for these reasons, too, Defendant Krongard breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

135.    Additional reason why demand on Defendant Mongillo is futile are as follows. The Company asserts that Defendant Mongillo is an independent director. Defendant Mongillo is beholden to Defendant Icahn. Defendant Mongillo served as a director for CVR Energy, Inc., a majority owned subsidiary of Icahn Enterprises. Furthermore, Defendant Mongillo previously served as managing director for of Icahn Capital LP from January 2008 until January 2011, and director of WestPoint Home, LLC from March 2009 until January 2011, both companies are indirectly controlled by Defendant Icahn. Moreover, he served as director of American Railcar Industries, Inc. from 2009 until 2011, a company which formerly was indirectly controlled by Defendant Icahn. Defendant Mongillo was on the Company's Board at the time the Company was engaged in inflating its net annual value and engaged in the "ponzi-like" dividend scheme. As a director, he conducted little if any oversight of the Company's internal control over public reporting of financial statements and of the Company's engagement in the schemes described herein, consciously disregarded his duties to monitor such control over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Thus, for these reasons, too, Defendant Mongillo breached his fiduciary duties, faces a substantial likelihood of

liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

136.    Additional reasons why demand on Defendant Nevin is futile are as follows. Defendant Nevin has served on the Board since December 2018 and serves as an executive of an Icahn-related entity. Thus, as the Company admits, he is a non-independent director. Defendant Nevin was on the Company's Board while the Company was inflating its net asset value and engaged in a "ponzi-like" dividend scheme. Furthermore, Defendant Nevin is beholden to Defendant Icahn; Defendant Nevin has served as CFO of Icahn Automotive Group LLC since 2020. Icahn Automotive LLC is Defendant Nevin's principal occupation. Defendant Nevin has also served as director for Viskase Companies, Inc., which is indirectly controlled by Defendant Icahn. Furthermore, Defendant Nevin served as director of Condulent Incorporated, a company in which Defendant Icahn has a non-controlling interest.  He has also previously served as director for Ferrous Resources Ltd., American Railcar Industries, and Federal-Mogul LLC, all of which Defendant Icahn previously indirectly controlled. Defendant Nevin has also served as a Managing Director at Icahn Enterprises, and a financial analyst at Icahn Enterprises. Lastly, Defendant Nevin is the son-in-law of Defendant Icahn. Defendant Nevin was on the Company's Board at the time the Company was engaged in inflating its net annual value and engaged in the "ponzi-like" dividend scheme. As a director he conducted little, if any, oversight of the Company's internal control over public reporting of financial statements and of the Company's engagement in the schemes describe herein, consciously disregarded his duty to monitor such control over reporting and engagement in the schemes, and consciously disregarded his duties to protect corporate assets. Thus, for these reasons, too, Defendant Nevin, breached his fiduciary duties, faces a substantial

likelihood of liability, is not independent or disinterested, and thus demand upon him is futile, and therefore, excused.

137.    Additional reasons that demand on the Board is futile follow.

138.    The Director-Defendants acted intentionally or recklessly in the schemes described herein.  The Director-Defendants approved of the Company's press releases containing materially false information and/or omissions.

139.    The Director-Defendants further engaged in or failed to mitigate the schemes to inflate the Company's net asset value, and ponzi-like economic structure.

140.    As mentioned above, the Director-Defendants were and remain beholden to Defendant Icahn, who, through his affiliates, holds approximately 85% of the Company's outstanding depositary units as reported in the 2022 10-K. Moreover, as set forth, the Director-Defendants financially rely on Defendant Icahn and his connections and affiliations. For these reasons, the Director-Defendants would not be able to respond with appropriate disinterestedness in a demand against him and certain of the other Defendants.

141.    The Director-Defendants, as members of the Board, were and are subject to the Code of Ethics.  The Code of Ethics goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations. The Code of Ethics requires all employees, officers and directors to avoid activities or relationships that conflict with the Company's interests or adversely affect the Company's reputation.  The Director-Defendants did not comply with the requirements of the Code of Ethics.  The Director-Defendants violated the Code of Ethics because they knowingly or recklessly engaged in and facilitated the misconduct alleged herein and participated in making and/or causing the Company to make the materially false and misleading statements

alleged herein. Because the Director-Defendants violated the Code of Ethics, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

142.    Furthermore, demand in this case is excused because the Director-Defendants, either control the Company or are beholden to each other.

143.    The Director-Defendants have longstanding business and personal relationships with each other and the Individual Defendants that preclude them from acting independently and in the best interests of the Company and its unitholders. These conflicts of interest precluded the Director-Defendants from adequately monitoring the Company's operations and internal controls and calling into question the Individual Defendants' conduct. Thus, any demand on the Directors would be futile.

144.    Icahn Enterprises has been, and will continue to be, exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Icahn Enterprises any part of the damages Icahn Enterprises suffered, and will continue to suffer, thereby.  Thus, any demand on the Directors would be futile.

145.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising

independent and disinterested judgment about whether to pursue this action on behalf of the unitholders of the Company.  Accordingly, demand is excused as being futile.

146.    The acts complained of herein constitute violations of fiduciary duties owed by Icahn Enterprises GP directors in their capacity as directors of Icahn Enterprises and these acts are incapable of ratification.

147.    The Director-Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the unitholders of Icahn Enterprise. If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion."  As a result, if the Directors were to sue themselves or certain of the officers of Icahn Enterprise and/or Icahn Enterprise GP, there would be no directors' and officers' insurance protection.  Accordingly, the Directors cannot be expected to bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery.  Thus, demand on the Directors is futile and, therefore, excused.

148.    If there is no directors' and officers' liability insurance, then the Directors will not cause Icahn Enterprises to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

149.     Thus, for all of the reasons set forth above, all of the Directors, and, if not all of them, at least five of them cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## FIRST CLAIM

### Against the Individual Defendants for Breach of Fiduciary Duties

150.     Plaintiff incorporates by reference and re-alleges the foregoing paragraphs one (1) through one hundred forty-nine (149) hereinabove, as though fully set forth herein for this paragraph one hundred fifty (150).

151.     Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Icahn Enterprises business and affairs.

152.     Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

153.     The Individual Defendants' conduct set forth herein was due to their intentional, reckless, or negligent breach of the fiduciary duties they owed to the Company through their roles as officers and directors of Icahn Enterprises GP, as alleged herein. The Individual Defendants intentionally, recklessly, or negligently breached or disregarded their fiduciary duties to protect the rights and interests of Icahn Enterprises.

154.     The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct those public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were

available to them.  Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Icahn Enterprises' securities.

155.     The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Icahn Enterprises' securities and benefitting third parties.

156.     Also, in breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

157.     In yet further breach of their fiduciary duties, during the Relevant Period, Defendant Icahn engaged in a lucrative insider sale. Defendant Icahn netted proceeds of $10,000,024, while the price of the Company's common stock was artificially inflated due to the false and misleading statements of material fact discussed herein.

158.     These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

159.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Icahn Enterprises has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

160.    Plaintiff on behalf of Icahn Enterprises has no adequate remedy at law.

## SECOND CLAIM

### Against Individual Defendants for Unjust Enrichment

161.    Plaintiff incorporates by reference and re-alleges the foregoing paragraphs one (1) through one hundred forty-nine (149) hereinabove, as though fully set forth herein for this paragraph one hundred sixty-one (161).

162.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of Icahn Enterprises.

163.    The Individual Defendants either benefitted financially from the improper conduct, including from the receipt of unjustly lucrative bonuses tied to the false and misleading statements, or received bonuses, stock options, or similar compensation from Icahn Enterprises that was tied to the performance or artificially inflated valuation of Icahn Enterprises, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

164.    Plaintiff, as a unitholder and a representative of Icahn Enterprises, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits -- including from benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

165.     Plaintiff on behalf of Icahn Enterprises has no adequate remedy at law.

## THIRD CLAIM

### Against Individual Defendants for Abuse of Control

166.     Plaintiff incorporates by reference and re-alleges the foregoing paragraphs one (1) through one hundred forty-nine (149) hereinabove, as though fully set forth herein for this paragraph one hundred sixty-six (166).

167.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Icahn Enterprises, for which they are legally responsible.

168.     As a direct and proximate result of the Individual Defendants' abuse of control, Icahn Enterprises has sustained significant damages. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, Icahn Enterprises has sustained and continues to sustain significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

169.     Plaintiff on behalf of Icahn Enterprises has no adequate remedy at law.

## FOURTH CLAIM

### Against Individual Defendants for Gross Mismanagement

170.     Plaintiff incorporates by reference and re-alleges the foregoing paragraphs one (1) through one hundred forty-nine (149) hereinabove, as though fully set forth herein for this paragraph one hundred seventy (170).

171.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard

to prudently managing the assets and business of Icahn Enterprises in a manner consistent with the operations of a publicly held corporation.

172.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Icahn Enterprises has sustained and will continue to sustain significant damages.

173.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

174.    Plaintiff, on behalf of Icahn Enterprises, has no adequate remedy at law.

## FIFTH CLAIM

### Against Individual Defendants for Waste of Corporate Assets

175.    Plaintiff incorporates by reference and re-alleges the foregoing paragraphs one (1) through one hundred forty-nine (149) hereinabove, as though fully set forth herein for this paragraph one hundred seventy-five (175).

176.    As a result of the foregoing, and by failing to properly consider the interests of the Company and its public unitholders, the Individual Defendants have caused Icahn Enterprises to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or costs to defend unlawful actions, and to lose assets from investors and customers who no longer trust the Company.

177.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

178.    Plaintiff on behalf of Icahn Enterprises has no adequate remedy at law.

## **REQUEST FOR RELIEF**

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)     Declaring that Plaintiff may maintain this action on behalf of Icahn Enterprises, and that Plaintiff is an adequate representative of the Company;

(b)     Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Icahn Enterprises;

(c)     Determining and awarding to Icahn Enterprises the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)     Directing Icahn Enterprises and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Icahn Enterprises and its unitholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for unitholder vote the following resolutions for amendments to the Company's partnership agreement and management documents and taking the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen Icahn Enterprises' Board's supervision of operations and develop and implement procedures for greater unitholder input into the policies and guidelines of the Board;

2. a provision to permit the unitholders of Icahn Enterprises to nominate at least five candidates for election to the Icahn Enterprises. Board; and

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

4. awarding Icahn Enterprises restitution from Individual Defendants, and each of them;

5. awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

6. granting such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 4th day of August, 2023

**LAW OFFICE OF JOSE D. SOSA, P.C.**
1141 Via Jardin
Palm Beach Gardens, FL 33418
Tel.: **(**561) 670-8237
E-Mail: pepe@pepesosalaw.com
         sosalaw@yahoo.com


_____

JOSE D. SOSA
Florida Bar No.: 150878

and

**THE BROWN LAW FIRM, P.C.**
Timothy Brown

767 Third Avenue, Suite 2501
New York, NY 10017
Tel: (516) 922-5427
Email: tbrown@thebrownlawfirm.net

*Attorneys for Plaintiff*

## VERIFICATION

I, Patrick Pickney am a plaintiff in the within action. I have reviewed the allegations made in this shareholder derivative complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.

7/28/2023      D a t e d

DocuSigned by:

*Patrick T. Pickney*

C42768BCFDFC48D...

Patrick Pickney